`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MERCEDES TORRES-MEDINA,

Plaintiff

v.                                                   CIVIL NO. 15-2085 (GAG)

DEPARTMENT OF THE ARMY, ET AL.,

Defendants.

## OPINION AND ORDER

In this case, Plaintiff Mercedes Torres-Medina ("Plaintiff"), a civilian Army employee at Fort Buchanan, alleges hostile work environment based on disability and retaliation for engaging in protected conduct by the United States, the Department of the Army, and several Army officers including John McHugh, Fernando Fernández-Miranda, Miguel Issac-Haussen, José Rivera-Acevedo, and Emibel Virella-Meléndez (collectively "Defendants"). (Docket No. 1.) Presently before the Court is Defendants' motion to dismiss under FED R. CIV. P. 12(b)(1) and 12(b)(6), and Plaintiff's opposition. (Docket Nos. 16; 19.)

### I.   Relevant Factual and Procedural Background

Plaintiff has been working as a Human Resources ("HR") specialist at Fort Buchanan. (Docket No. 1 ¶¶ 10-11.) Plaintiff's position was eliminated in 2007, and her duties transferred to the 81st Regional Support Command in Fort Jackson, South Carolina. Id. ¶ 22. Plaintiff complains that she did not receive any formal notification regarding her employment status, and the options she had when her position was eliminated. Id. ¶ 13. Since then, Plaintiff has been working in the HR office, the Family Programs Office, and the Operations and Training Directorate. Id. ¶ 22.

Civil No. 15-2085 (GAG)

In May 2008, Plaintiff filed her first USAR Equal Employment Opportunity Compliance Office ("EEO") complaint, in which she requested reasonable accommodations for a stroke, arthritis, depression, asthma, and panic attacks.  Id. ¶ 15.  This complaint was resolved through a settlement on August 18, 2008, and Plaintiff was offered office space designed to accommodate her physical limitations.  Id.  Because of her stroke, Plaintiff suffers from mobility problems, no strength on the left side of her body, and lost eye sight in her left eye.  Id. ¶ 16.  She struggles with grabbing small objects, getting out of bed, standing, walking, bending and sleeping.  Id. ¶ 17.  Plaintiff also suffers from depression, post-traumatic stress disorder, and panic attacks.  Id. ¶ 19.  These conditions affect her day to day interaction with people, especially when under stress.  Id.

On February 17, 2011, Deputy Commander Isaac notified Plaintiff of his plan to relocate her to a new office.  Id. ¶ 26.  Plaintiff expressed her concerns that a new office would not provide her with the reasonable accommodations she needed and was afforded to by the previous EEO settlement.  Id.  Defendant Isaac responded that they would comply with the agreement.  Id.  On February 19, 2011, Plaintiff reduced her concerns in writing in a letter addressed to Defendant Isaac.  Id. ¶ 27.  On February 22, 2011, Defendant Isaac met with Plaintiff to inform her of his plan to change her work location to Building 152, where Plaintiff could perform retirement services and other military personnel work.  Id. ¶ 28.  Plaintiff again reminded Defendant Isaac that this new location did not have the work space needed as detailed in her reasonable accommodations request per the settlement agreement, but says that he did not listen to her.  Id. ¶ 28.  Plaintiff was so upset after this meeting that an ambulance had to be called for medical assistance and she was transferred to the hospital with chest pain and respiratory troubles.  Id. ¶ 29.

That evening, she emailed Defendant Isaac informing her that she would not return to work until Thursday, and reiterated that there was no valid reason to move her to Building 152.  Id. ¶ 30.

Civil No. 15-2085 (GAG)

Isaac emailed her back informing her that her work location would not change, and that she would receive her new duties from HR Specialists Emibel Virella and Norma Rivera. Id. ¶ 32. On March 4, 2011, Plaintiff met with the HR officer and her newly assigned first level supervisor, but did not receive training or guidance on her new duties. Id. ¶ 36. On March 17, 2011, Plaintiff learned from the EEO counselor's report that Defendant Isaac had accused Plaintiff of "basically faking [her] injury or medical conditions." Id. ¶¶ 37-38. On March 29, 2011, Plaintiff filed another EEO complaint, this time alleging discrimination. Id. ¶¶ 14, 40.

On April 18, 2011, Plaintiff learned that her training requests had not been approved. Id. ¶ 39. Plaintiff alleges she was not allowed to talk at this meeting, and the stress from this situation caused her to be rushed to the emergency room once again. Id. Plaintiff also claims sometime between April 2008 and April 2011, Defendant Virella drafted a letter requesting an investigation against Plaintiff for her behavior as an employee and as a civilian. Id. ¶ 33. Plaintiff maintains Defendant Virella did so in order to slander and taint Plaintiff's reputation at work. Id. ¶ 34.

Since February 13, 2013, Plaintiff has been working as a Special Project Officer for the 1st MSC Operations and Training Directorate. Id. ¶ 13. From February 2013 until December 31, 2013, Defendant José Rivera was Plaintiff's supervisor. Id. ¶ 41. Plaintiff alleges that as soon as Rivera became aware of Plaintiff's EEO activity, he became aggressive, defensive, loud, and would always bring another person as a witness when communicating with Plaintiff. Id. ¶ 42. Plaintiff also alleges that Defendant Rivera initiated an investigation against Plaintiff because of her EEO activity. Id. ¶ 43. Defendant Fernández, a friend of Defendant Rivera, appointed María Marrero as the investigator on March 20, 2013. Id. ¶ 44. Plaintiff maintains she never received a negative review or disciplinary action before this investigation, and that her performance and appraisals were always excellent. Id. ¶¶ 46-47. On March 27, 2011, the investigator scheduled a

Civil No. 15-2085 (GAG)

meeting with Plaintiff in relation to the investigation for that same day, not giving Plaintiff enough time to contact a lawyer to be present at the meeting.  Id. ¶ 48.  The investigation ultimately resulted in a Notice of Proposed Suspension against Plaintiff on January 9, 2014.  Id. ¶ 50.  Upon learning this, Plaintiff was once again had to be rushed to the emergency room.  Id. ¶ 51.

## II.   Standard of Review

Under Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level."  Id. at 555.  In so doing, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.  Parker, 514 F.3d at 90. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint alleged—but it has not show[n]—that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)) (internal quotation marks omitted).

Under Rule 12(b)(1), defendants may move to dismiss for lack of subject-matter jurisdiction.  See FED. R. CIV. P. 12(b)(1); see also Sumitomo Real Estate Sales, Inc. v. Quantum Dev. Corp., 434 F. Supp. 2d 93, 95 (D.P.R. 2006) (citing Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001)).  "In this type of jurisdictional challenge, 'the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the court must take all of plaintiff's allegations as true and must view them, along with all reasonable inferences therefrom, in the light most favorable to plaintiff.'"  Torres Maysonet v. Drillex, S.E., 229 F. Supp.

Civil No. 15-2085 (GAG)

2d 105, 107 (D.P.R. 2002) (quoting Freiburger v. Emery Air Charter, Inc., 795 F.Supp. 253, 257 (N.D.Ill. 1992)).

**III.    Legal Analysis**

    A.   ADA and state law claims

    Defendants first move to dismiss arguing that Plaintiff can only base her claims off the Rehabilitation Act and Title VII.  (Docket No. 16 at 9-11.)  "The ADA is not available to federal employees." Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 11 n. 1 (1st Cir. 2004) (quoting Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998)).  Thus, as a federal employee of the U.S. Army Reserve, Plaintiff's discrimination claims cannot be vindicated through the ADA.[1]

    Plaintiff's Article 1802 and 1803 claims also fail.  The Rehabilitation Act is not only "the judicial avenue appropriate for a federal employee's disability discrimination allegation, *Calero-Cerezo v. United States Dep't of Justice,* 355 F.3d 6, 12 n. 1 (1st Cir. 2004), [but also] the exclusive remedy for [Plaintiff]'s disability discrimination claim in light of *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)."  Stoll v. Principi, Case No. 02-2761(JAG), 2005 WL 4542884, at *5 (D.P.R. Aug. 2, 2005), aff'd, 449 F.3d 263 (1st Cir. 2006); see also Rodriguez Alzugaray v. United States, Case No. 11-1347(PG), 2014 WL 1275964, at *7 (D.P.R. Mar. 27, 2014) ("to the extent [that plaintiff] asserts Puerto Rico law claims on the basis of disability discrimination, they are preempted.").  Plaintiff alleges Article 1802 and 1803 claims based on the fact that Defendants discriminated by creating "a hostile environment for Plaintiff at her workplace." (Docket No. 1 at 13.)  These claims, as applied to Plaintiff, can only be vindicated

---

[1] The same standards nevertheless apply to claims under the ADA and under the Rehabilitation Act. See Oliveras-Sifre v. Puerto Rico Dep't of Health, 214 F.3d 23, 25 n. 2 (1st Cir. 2000) (citing Feliciano v. State of R.I., 160 F.3d 780, 784 (1st Cir. 1998); 29 U.S.C. § 794(d).  Plaintiff's discrimination claims will be assessed below pursuant to the Rehabilitation Act.

Civil No. 15-2085 (GAG)

through the Rehabilitation Act.   Thus, Plaintiff's ADA and state law claims are hereby **DISMISSED**.

      B.   Timeliness of the Complaint

      Federal employees pursuing discrimination claims in federal court must first exhaust all available administrative remedies.   Brown v. General Services Administration, 425 U.S. 820, 832 (1976); Franceschi v. U.S. Dep't. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008).   The Code of Federal Regulations ("CFR") provides that Plaintiff must make the initial contact with an EEO officer within forty-five (45) days of the complained conduct and then may file a formal complaint with the EEO if the issue is not resolved.   See 29 C.F.R. §§ 1614.105, 1614.106.   The formal complaint must be filed with the agency within 15 days of receiving notice from the EEO counselor.   See 29 C.F.R. § 1614.105.   If the agency issues a final agency decision ("FAD"), then the plaintiff has 90 days to appeal.   See 29 C.F.R. § 1614.407.

      In this case, the Army rendered a FAD on May 4, 2015.   Defendants maintain that Plaintiff filing the instant action on August 10, 2015, ninety-one days (91) after the agency decision, warrants dismissal.   The Court disagrees because August 9, 2015 was a Sunday.   "When the final day of a computed period of time prescribed or allowed by an applicable statute for doing an act falls on a Saturday, Sunday, or legal holiday, the period is automatically extended to the next business day."   Chévere-Rodríguez v. Pagán, 114 Fed. Appx. 412, 414 (1st Cir. 2004) (unpublished) (quoting FED. R. CIV. P. 6(a)).   Thus, this case is not time-barred.

      C.   Proper Defendants

      Title VII requires that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in a civil action.   42 U.S.C. § 2000e-16(c).   The Rehabilitation Act also "incorporates remedies and procedures of Title VII."   Stoll, 2005 WL 4542884, at *5 (citing

Civil No. 15-2085 (GAG)

1    Meyer v. Runyon, 869 F.Supp. 70, 76 (D.Mass. 1994).  Thus, the Secretary of the Army is the only

2    proper defendant in this case.  All claims against other Defendants, including the United States, the

3    Department of the Army and individual officials are hereby **DISMISSED**.

4          D.  Rehabilitation Act – Discrimination

5          "[T]he caselaw construing the ADA generally pertains equally to claims under the

6    Rehabilitation Act."  Calero-Cerezo, 355 F.3d at 19.  To prove a discrimination claim under the

7    Rehabilitation Act, Plaintiff "must prove by a preponderance of the evidence that: 1) she was

8    disabled within the meaning of the statute; 2) she was qualified to perform the essential functions

9    of the job, either with or without a reasonable accommodation; and 3) the employer took adverse

10   action against her because of the disability."  Rios-Jiménez v. Principi, 520 F.3d 31, 41 (1st Cir.

11   2008) (citing Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st Cir. 2002)).   At the

12   motion to dismiss stage, Plaintiff need not establish every element of her *prima facie* case.  See

13   Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013).  However, the *prima facie*

14   case serves "as part of the background against which a plausibility determination should be made."

15   Id. (citing Grajales, 682 F.3d at 46; Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir.

16   2011)).  "[T]he elements of a prima facie case may be used as a prism to shed light upon the

17   plausibility of the claim."  Id.   Defendants move to dismiss challenging Plaintiff's failure to

18   sufficiently allege that she suffered an adverse employment action or that Defendants

19   discriminated because of her disability.  (Docket No. 16.)

20          i.  Adverse Employment Action

21          For the purposes of a discrimination claim, an adverse employment action is one which

22   materially changes the conditions of Plaintiff's employment.  Morales-Vallellanes v. Potter, 605

23   F.3d 27, 35 (1st Cir. 2010) (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S.

Civil No. 15-2085 (GAG)

53, 61-62 (2006)); <u>Castro-Medina v. Procter & Gamble Commercial Co.</u>, 565 F. Supp. 2d 343, 371 (D.P.R. 2008).  Material changes include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." <u>Morales-Vallellanes</u>, 605 F.3d at 35 (citing <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)) (internal quotations omitted).  "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."  <u>Marrero v. Goya of Puerto Rico, Inc.</u>, 304 F.3d 7, 23 (1st Cir. 2002) (internal quotation marks omitted).

Plaintiff alleges that she suffered adverse employment actions when (1) the Army failed to notify Plaintiff of her employment options following the elimination of her position in 2007; (2) Defendant Isaac informed her that he planned to relocate her to a new office in violation of the EEO settlement; (3) she was placed under Virella's supervision, a non-supervisor who then started an investigation against Plaintiff; (4) she did not receive official written notification with regards to her new position; (5) she did not receive any training or guidance with her new assignment; (6) Defendant Isaac accused her of faking her medical conditions; and (7) Defendant Rivera initiated an investigation against her.  (<u>See</u> Docket No. 1.)

An internal investigation into "suspected wrongdoing by an employee" is not an adverse employment action in the discrimination context.  <u>Kuhn v. Washtenaw County</u>, 709 F.3d 612, 625 (6th Cir. 2013) (quoting <u>Dendinger v. Ohio</u>, 207 Fed. Appx. 521, 527 (6th Cir. 2006) (holding that an employer's internal investigation of an employee and its failure to notify the employee of the investigation until after it had been completed did not constitute an adverse employment action)).  Even taking as true that Plaintiff was investigated twice, Plaintiff failed to show how these investigations affected her because they did not result in any material changes to her employment,

Civil No. 15-2085 (GAG)

and it had no impact on her status as an employee.  Unless the investigation itself implements a certain material adverse change in the terms and conditions of Plaintiff's employment, it is not an adverse employment action in the discrimination context.

As to Defendants' alleged failure to notify in writing, decision to place her under non-supervisor supervision, failure to train, and intentions to move her to a new building, also do not constitute adverse employment actions.  A "reassignment that involves only minor changes in working conditions normally does not constitute an adverse employment action." Marrero, 304 F.3d at 23.  Where a plaintiff complains that she has "experienced diminished communication regarding office matters," she must specifically allege important decisions from which she was excluded. See Gu v. Boston Police Dept., 312 F.3d 6, 15 (1st Cir. 2002).  Additionally, in order for a failure to train claim to constitute an adverse employment action, Plaintiff must show that missing this training materially affected her. See, e.g., Colón-Fontánez v. Mun. of San Juan, 660 F.3d 17, 40-41 (1st Cir. 2011) (citing Carmona-Rivera, 464 F.3d at 19) (finding a defendant's intentional barring of plaintiff from participating in a training workshop not materially adverse absent a showing that the failure to train carried a material harm as a result).

Here, Plaintiff has fails to allege any facts that link these employment actions to any material change in her working conditions, or that show she was affected in the terms and conditions of her employment.  Plaintiff claims that since 2004, the Army Reserve has undergone transformation, her position was eliminated in 2007, and the duties she performed were transferred to another command.  Nevertheless, Plaintiff has continued working at the HR Office, and other departments within the Army.  While she did not receive a formal letter of notification regarding new employment options, she has not alleged any facts that show this omission affected her employment terms or conditions, or that such diminished communication barred her from any

**Civil No. 15-2085 (GAG)**

work opportunities, specifically when Plaintiff continues working for the Army in her capacity as a Special Project Officer.  Likewise, Plaintiff has failed to show how being supervised by Virella, a non-supervisor, constitutes an adverse employment action.  The mere fact that Plaintiff was displeased with her new chain of command does not rise to a materially adverse employment action.  While Plaintiff alleges that she did not receive training or guidance in her new assignment, she admitted that she met with both HR officers and her newly assigned first level supervisor to discuss her reassignment.  Plaintiff fails to plead any facts to show that the Army's denial of her training request had any negative consequence in her work performance at the new position.  Likewise, from the moment she complained to Defendant Isaac that she should not be relocated to Building 152, he responded that they would comply with the EEO agreement, and ultimately informed her that the detail would not be executed.

Lastly, Plaintiff claims that Defendant Isaac accused her of faking her medical condition in a memorandum related to her EEO complaint.  Yet, "criticism that carries with it no consequences is not materially adverse and therefore not actionable."  <u>Bhatti v. Trustees of Boston University</u>, 659 F.3d 64, 73 (1st Cir. 2011).  Plaintiff failed to plead any facts that link Defendant Isaac's accusations to any material changes in her terms of employment, whether through her EEO activity or her employment at the Army.  Without more, these allegations do not suffice to show that Plaintiff suffered an adverse employment action under the Rehabilitation Act.

ii.  <u>Causation</u>

Even if Plaintiff could establish that such actions constitute adverse employment actions, she has failed to allege any facts from which the Court can infer that Defendants took those decisions because of her disability.  The First Circuit has found conduct such as frequent harassment, ridicule, and mentions of plaintiff's disability as sufficient evidence that a plaintiff is

Civil No. 15-2085 (GAG)

discriminated because of his disability.  See Quiles-Quiles v. Henderson, 439 F.3d 1, 7-8 (1st Cir. 2006) (relying on Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998); Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 43 n. 5 (1st Cir. 2003)).  Other circuits also require evidence, either direct or circumstantial, that the alleged employment actions are connected to Plaintiff's disability.  See, e.g., Russell v. TG Mo. Corp., 340 F.3d 735, 742 (8th Cir. 2003) (Plaintiff failed to establish ADA claim because of her bipolar disorder where there was no evidence that she was fired because of her disability); McKenzie v. Dovala, 242 F.3d 967, 969 (10th Cir. 2001) (finding discriminatory evidence to beat summary judgment where sheriff knew plaintiff had a record of impairment, and he discriminated against her based on his belief that she could not perform certain jobs).

Plaintiff's only allegation that could possibly point to discriminatory animus is Defendant Isaac's statements accusing Plaintiff of faking her injuries or medical condition on a memorandum addressed to the Department of the Army.  Plaintiff only learned about this statement after reading the EEO counselor's report.  Yet, even taking this isolated incident as true, such conduct does not rise to the level found actionable by the First Circuit.  None of Plaintiff's allegations indicate discriminatory animus.  To the contrary, her own allegations show that even when she requested Defendant Isaac to not relocate her to another building, Defendant Isaac responded that the Army would comply with the EEO agreement protecting her reasonable accommodations.  Plaintiff fails to raise any plausible inference that she was discriminated on because of her disability.  Thus, Plaintiff's bare assertions inferring that her supervisors were aware of her disability are not sufficient to set forth a plausible claim of discrimination under the Rehabilitation Act. Defendants' motion to dismiss as to this claim is hereby **GRANTED.**

11

Civil No. 15-2085 (GAG)

E. <u>Title VII – Retaliation</u>

To prove a claim of retaliation, a plaintiff must establish that she: (1) engaged in protected conduct under Title VII; (2) suffered a materially adverse employment action that harmed the plaintiff inside or outside the workplace enough to 'dissuade a reasonable worker from making or supporting a charge of discrimination'; and (3) that the adverse action taken against her was causally connected to her protected activity. <u>Fantini v. Salem State College</u>, 557 F.3d 22, 32 (1st Cir. 2009); <u>Bibiloni Del Valle v. Puerto Rico</u>, 661 F. Supp. 2d 155, 168 (D.P.R. 2009) (quoting <u>Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff</u>, 511 F.3d 216, 223 (1st Cir. 2007)). "The relevant question is whether [the employer] was retaliating against [the plaintiff] for filing a complaint, not whether he was motivated by [her disability] at the time." <u>See</u> <u>DeCaire v. Mukasey</u>, 530 F.3d 1, 19 (1st Cir. 2008).   The applicable conduct to analyze is that which happened after Plaintiff engaged in protected activity. <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1, 8 (1st Cir. 2006) (citing <u>Gregory</u>, 243 F.3d at 701).   Since there is no question that Plaintiff engaged in protected conduct by filing an EEO complaint, the Court focuses on the other two prongs of Plaintiff's *prima facie* case: that she suffered an adverse employment action, and that this action is casually connected to her protected activity.

i. <u>Adverse Employment Action</u>

The standard for establishing an adverse employment action in the retaliation context differs from the standard in the discrimination framework.   The alleged retaliatory act in this context need not bear on the terms or conditions of employment, but the proper inquiry is whether the employer's actions were harmful enough to have "dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern</u>, 548 U.S. at 66-68 (holding the anti-retaliation provisions of Title VII are broader than the anti-discrimination provisions).

Civil No. 15-2085 (GAG)

Plaintiff bases her retaliation claim on two adverse employment actions: (1) that she was subjected to a hostile work environment; and that (2) she was investigated and given a notice of proposed suspension.  (Docket No. 1 at 10-12.)

### 1.   Retaliatory Hostile Work Environment

"The adverse employment action may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment." Quiles-Quiles, 439 F.3d at 9; see also Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005).   The alleged workplace harassment must be sufficiently severe or pervasive to alter the conditions of Plaintiff's employment.   Id.   Courts must look at the totality of the circumstances.   Valentin-Almeyda, 447 F.3d at 94.   Offhand remarks, simple teasing, tepid jokes, and isolated incidents are at one end of the continuum and are not actionable.[2]   Severe or pervasive mockery, bothersome attentions, innuendoes, ridicule, and intimidation are at the other end of the continuum and may establish a hostile work environment.[3]   Here, Plaintiff alleges that Defendant Rivera was her supervisor from February 2013 until December 31, 2013.   Plaintiff maintains that as soon as Defendant Rivera became aware of Plaintiff's EEO activity, his demeanor changed, he became aggressive and was always defensive, used a loud tone of voice, and always brought someone with him as a witness if

---

[2] See, e.g., Colon-Fontanez, 660 F.3d at 44 (granting summary judgment because plaintiff with fibromyalgia failed to establish a severe and pervasive hostile work environment based on her disability even when she presented evidence that her supervisor avoided interacting and socializing with her, yelled at Plaintiff in front of other employees, accused her of faking neck pain, and interfered in her interactions with co-workers.); Feliciano-Hill, 439 F.3d at 26-27 (holding jury could have reasonably found that offhand remarks, isolated comments from her peers, and defendants' insistence that Plaintiff provide medical documentation regarding her disability did not constitute a hostile work environment); Alvarado v. Donahoe, 687 F.3d 453, 459-61 (1st Cir. 2012) (plaintiff with schizoaffective disorder did not show that alleged harassment, which consisted of three discrete verbal exchanges over more than eight months, changed conditions of his employment or that he was subjected to objectively hostile work environment.).

[3] See, e.g., Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 89 (1st Cir. 2006) (upholding verdict on hostile work environment claim where jury found that constant and unbearable mockery and harassment based on his disability lead to the plaintiff's resignation.); Quiles-Quiles, 439 F.3d at 8 (evidence that "after [Plaintiff] filed his complaint, the harassment expanded to include, inter alia, threats [and] screaming tirades directed at [Plaintiff, and] efforts . . . to interrupt [Plaintiff's] pursuit of a union grievance" was sufficiently severe and pervasive.).

13

**Civil No. 15-2085 (GAG)**

he had to speak with Plaintiff. However, these allegations simply fail to rise to the level of severe and pervasive hostile work environment of the type the First Circuit has recognized as actionable. Plaintiff has failed to sufficiently allege any facts to show that such harassment unreasonably interfered with her work performance.

### 2. Investigation and Notice of Suspension

Plaintiff also alleges that in retaliation to her EEO complaint, Defendant Rivera initiated an investigation against Plaintiff. (Docket No. 1 at 10-12.) An adverse employment action does not necessarily need to be an "ultimate employment decision," as long as it would have dissuaded a reasonable employee from filing a claim. See Burlington Northern, 548 U.S. at 67-68 (internal citations omitted). "Being investigated by one's employer could deter a reasonable person from complaining about discrimination because investigations can be intrusive and intimidating." Lee v. City of Syracuse, 603 F. Supp. 2d 417, 436 (N.D.N.Y. 2009), abrogated on other grounds by Widomski v. State U. of New York (SUNY) at Orange, 748 F.3d 471 (2d Cir. 2014).

In the retaliation context, Plaintiff has sufficiently alleged an "adverse employment action" given that Defendant Rivera initiated an investigation against Plaintiff even though she had never received a negative performance evaluation, or disciplinary actions. Additionally, this investigation resulted in a notice of proposed suspension. The Court finds in the investigation coupled with the subsequent letter of suspension, would be the type of action that would dissuade a reasonable employee, with no prior disciplinary actions and excellent track record, from filing EEO complaints of discrimination.

### ii. Causation

Plaintiff must also show that the alleged employment actions are causally connected to the protected activity. Title VII retaliation claims "must be proved according to traditional principles

14

Civil No. 15-2085 (GAG)

of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." University of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013).  Plaintiff must plead sufficient facts to show that but-for her discrimination complaints, she would have not been investigated and given a notice of proposed suspension.  Id.; see also Moreta v. First Transit of PR, Inc., 39 F. Supp. 3d 169, 181 (D.P.R. 2014) (citing Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 846 (2d Cir. 2013) (but-for causation does not require proof that retaliation was the only cause of the employer's action, only that the adverse action would not have occurred in the absence of the retaliatory motive)).  A causal link may also be inferred when the retaliatory conduct happens soon after the protected activity.  Biblioni del Valle v. Puerto Rico, 661 F. Supp. 2d 155, 170 (D.P.R. 2009).  When an adverse action occurs long after the protected activity, or without direct evidence, and employee may still prevail by presenting enough circumstantial evidence to infer that there is a causal link between the protected activity and the adverse employment action.  See DeCaire, 530 F.3d 1 at 20; see also Farb v. Perez-Riera, 957 F. Supp. 2d 129, 142 (D.P.R. 2013) ("[b]esides temporal proximity, Plaintiff can present other sources of circumstantial evidence that can substantiate a retaliation claim, including evidence of differential treatment.").  "[T]he threshold at this stage in the analysis is low."  Dickinson v. UMass Meml. Med. Group, Case No. 09-40149(FDS), 2011 WL 1155497, at *14 (D. Mass. Mar. 24, 2011).

Here, Plaintiff filed her EEO complaint on March 29, 2011.  Defendant Rivera allegedly started the investigation against her in March, 2013.  Two years is too long to establish causation based solely on temporal proximity.  However, Plaintiff's allegations that as soon as Defendant Rivera learned of her EEO activity, he became angry towards her, used a loud tone of voice, and would always be accompanied by someone before meeting with Plaintiff, make it plausible that

Civil No. 15-2085 (GAG)

but-for her protected activity, Defendants would not have retaliated against her.   Additionally, Defendant Rivera was the one who initiated the investigation against Plaintiff, even though Plaintiff alleges that she had no prior disciplinary issues at work, her past performance appraisals were excellent, and she had never been placed on probation.   Plaintiff also alleges that it was Defendant Fernández, a friend of Defendant Rivera, who appointed Marrero to conduct the investigation against Plaintiff.  This investigation resulted in a notice of proposed suspension.

Thus, Plaintiff has presented enough facts, which taken as true, could establish the necessary circumstantial evidence to place Plaintiff over the *prima face* threshold.   Plaintiff's retaliation claim survives Defendant's motion to dismiss.

## IV.     Conclusion

The Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss at Docket No. 16.  The only claim that survives is Plaintiff's Title VII retaliation claim against the Secretary of the Army.  All other claims and defendants are hereby **DISMISSED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of August, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

16