IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MERCEDES TORRES-MEDINA**,
    Plaintiff,

v.

**DEPARTMENT OF THE ARMY**, *et al.*,
    Defendants.

Civil No. 15-2085 (BJM)

## OPINION AND ORDER

Mercedes Torres-Medina ("Torres"), a civilian Army employee at Fort Buchanan, brought this action against the United States, the Department of the Army, the Secretary of the Army, John McHugh (now Mark Esper), and several Army officers, including Fernando Fernandez Miranda, Jose A. Rivera, Miguel A. Isaac-Haussen, and Emibel Virella Melendez. Docket No. 1. Torres's complaint alleged claims under the Americans with Disabilities Act, 42 U.S.C. § 12101-et seq., the Rehabilitation Act, 29 U.S.C. § 701-et seq, and Title VII, 42 U.S.C. § 2000e-2. *Id*. Specifically, Torres's Title VII claim alleges that the defendants violated Title VII by retaliating against her for engaging in protected conduct. *Id*. The court has since dismissed all claims against co-defendants the United States, the Department of the Army, Fernandez, Rivera, Isaac, and Virella. Docket No. 21. Only the Title VII retaliation claim against the Secretary of the Army remains. Docket No. 20. The Secretary now moves for summary judgment as to this claim, Docket No. 56, and Torres opposes. Docket No. 60. The case is before me on consent of the parties. Docket No. 31.

For the following reasons, the Secretary's motion is **DENIED** in part and **GRANTED** in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions.[2]

Torres is a Human Resources Specialist at 1st Mission Support Command ("1st MSC") at Fort Buchanan, which provides mission command to assigned units of the Army Reserve in Puerto Rico and the U.S. Virgin Islands. DSF ¶ 1. In 2006, Torres filed an Equal Employment Opportunity (EEO) discrimination claim against Virella, who is Torres's former supervisor. DSF ¶ 2; PSF ¶ 2.

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). Litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

[2] Defendants' Statement of Facts ("DSF"), Docket No. 58; Plaintiff's Statement of Facts ("PSF"), Docket No. 61 at 6–8; Plaintiff's Response to Defendants' Statement of Facts ("PRSF"), Docket No. 61 at 1–6.

Torres filed a separate EEO complaint against Isaac, who is the representative for the Commanding General, in 2011. Docket No. 1 ¶¶ 14, 40.

Rivera is the Assistant Chief of Staff for the 1st MSC, and he became Torres's new supervisor in February 2013. DSF ¶ 4. Rivera testified that he learned of Torres's prior EEO complaint against Virella on April 18, 2012. DSF ¶ 29; Docket No. 58-2 at 31:15–21. But Torres testified that Rivera became aware of her EEO activity when he became her supervisor in 2013. PSF ¶ 1; Docket No. 58-2 at 4:12–17.

According to Torres, Rivera was nice to her, but his attitude changed once he became her supervisor and learned of her EEO activity, at which point he became aggressive and loud. DSF ¶ 26; PSF ¶ 1; PRSF ¶ 29; Docket No. 58-2 at 5:18–20; 8:20–22. Torres's co-worker, Elsa Cortes, testified that on two occasions she observed Rivera yelling at Torres after he became her supervisor. PSF ¶ 9. This surprised Cortes "because [Rivera had] never had that attitude with [her] or with anybody that worked in [her] area." *Id.*; Docket No. 61-2 at 17:1–8. According to the Secretary, however, Rivera's change in attitude was due to his new role and responsibilities as Torres's supervisor and was unrelated to her EEO activity. DSF ¶ 27 (citing Docket No. 58-2 at 9:9–11). And Rivera normally "was dramatic and used facial expression when he talked—[that] it was his trademark." DSF ¶ 30.

At some point in February 2013, Rivera saw Torres releasing soldiers' personal medical records to two non-employees. DSF ¶ 6; Docket No. 58-2 at 32:17–33:3. In Torres's testimony, she tacitly admitted to sharing personal information. Docket No. 58-2 at 19:18–19 ("I was doing it for so many years."). When Rivera questioned Torres about this incident, she explained that she was providing the records based on a Memorandum of Understanding (MOU). *Id*. Rivera then asked Isaac, the representative for the Commanding General, whether an MOU existed, but he told Rivera that there was no MOU. Docket No. 58-2 at 33:4–6. Separately, and presumably around the same time as this incident, Virella notified Rivera that Torres was blackmailing her. *Id*. at 33:12–14. Rivera testified that another employee also notified him that Torres was threatening the other

employee with her lawyer. *Id*. at 33:15–17. In addition, Torres also testified that two people complained about her use of obscene language. *Id*. at 19:13–15.

According to Rivera, Torres's conduct concerning the divulging of personal records and Virella's separate complaint motivated him to request[3] an investigation into Torres because of her possible violations of Army policy and HIPAA.[4] Docket No. 58-2 at 33:10–14; DSF ¶ 5. Rivera submitted the request to Fernandez, who was the Commander of the 1st MSC at the time, in March 2013; Fernandez then appointed Captain Maria N. Morrero as the investigator. Docket No. 1 ¶ 44; DSF ¶¶ 7, 8. There is no evidence that other employees in the 1st MSC were violating the same policy, and Torres "agrees that it is reasonable for the Army to investigate when there is an allegation that federal law has been violated." DSF ¶¶ 42, 43.

After the investigation, Morrero issued findings of impropriety. DSF ¶ 8. BG Burgos, the new Commander of the 1st MSC, then received notice of the investigation recommendations. DSF ¶¶ 12, 13. Burgos had no involvement in the investigation against Torres, nor did he have any prior awareness of the investigation before becoming Commander. DSF ¶¶ 12, 13. He acted solely on the conclusions that were provided to him by Morrero. PRSF ¶ 13. When Burgos received the notice, he accounted for Torres's years of service and performance, reduced the recommended ten-day suspension to five days, and signed the notice of proposed suspension. DSF ¶¶ 12, 13, 14. Torres-Sabater—Torres's third-level supervisor who had no knowledge of Torres's prior EEO activity at the time—subsequently delivered this notice of proposed suspension to Torres. DSF ¶ 9; Docket No. 58-2 at 24:8–16. Torres was then suspended. DSF ¶¶ 14, 15.

In 2015, Torres brought this Title VII action against the Secretary. Docket No. 1. Torres contends that she was subjected to retaliation by Rivera, Isaac, Virella, Fernandez, and Burgos.

---

[3] Torres objects to this statement of fact, clarifying that, per her testimony, Rivera "started" not "requested" the investigation. PRSF ¶ 5. But Rivera's testimony explains that a request to investigate is submitted to the Commanding General who subsequently decides whether or not to initiate the investigation. Docket No. 58-2 at 32:10–15. Regardless, it is clear that Rivera's "request" began the process.

[4] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104–191, 110 Stat. 1936 (1996).

DSF ¶ 20. The Secretary now moves for summary judgment on Torres's Title VII retaliation claim. Docket No. 56.

## DISCUSSION

To establish a *prima facie* case of Title VII retaliation, a plaintiff must show (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the adverse action and the protected activity. *See Fantini v. Salem State College*, 557 F. 3d 22, 32 (1st Cir. 2009); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 25 (1st Cir. 2004).

The causation element "must be proved according to traditional principles of but-for causation, not the lessened causation test" for discrimination claims. *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 360 (2013). That is, "the plaintiff must establish that no reasonable jury could conclude [that she] would have faced the adverse employment actions had [she] not engaged in protected conduct." *Rock v. Lifeline Sys. Co.*, No. CV 13-11833-MBB, 2015 WL 6453139, at *14 (D. Mass. Oct. 23, 2015) (citing *Valázquez-Pérez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 278 (1st Cir. 2014)). "Causality assumes a link between the decision-maker, the protected activity, and the adverse action. The link consists of knowledge. To that end, the retaliating party must be aware of the protected activity that he is believed to be retaliating against." *Serrano v. Donahoe*, No. CIV. 12-1055 (PAD), 2014 WL 4924434, at *12 (D.P.R. Sept. 30, 2014) (citing *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013); *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014)).

Upon establishing the *prima facie* case, the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973), is then employed. *See Calero-Cerezo*, 355 F.3d at 26. First, "a presumption of discrimination arises and the burden" shifts to the employer "to show a 'legitimate, non-discriminatory reason' for the adverse employment action." *Natal Perez v. Oriental Bank & Tr.*, 291 F. Supp. 3d 215, 234 (D.P.R. 2018) (quoting *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010)). Then, if the employer-defendant makes this showing, "the burden [] shifts back to the plaintiff to show that the proffered reason is

actually pretextual, and that the plaintiff would not have suffered an adverse action absent retaliatory animus." *Id*. (citing *Nassar*, 570 U.S. at 360). The First Circuit has created a particular method for courts to "consider the *McDonnell Douglas* analysis in the context of summary judgement." *Calero-Cerezo*, 355 F.3d at 26. Namely, "the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a question for a factfinder as to pretext and discriminatory animus." *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535–36 (1st Cir. 1996).

Here, the parties agree that there is sufficient evidence on record to support the first and second elements of the *prima facie* case for retaliation. *See* Docket No. 56 ¶ 3 n.1; Docket No. 60 at 1. Specifically, the parties agree that Torres's prior EEO complaints are protected activities, and the investigation and her suspension are adverse employment actions. *Id*.

The Secretary's motion for summary judgment instead centers on the element of causation and Torres's burden under the *McDonnell Douglas* analysis. The Secretary argues that a reasonable jury could not find that the Army's reasons for investigating and suspending Torres were pretext and that the investigation and suspension would not have occurred "absent retaliatory animus." *Natal Perez*, 291 F. Supp. 3d at 234; *see* Docket No. 57 at 2–3.

As discussed below, I find that the Secretary proffered a legitimate reason for the challenged employment action; that the record provides sufficient evidence to create a triable dispute of material fact as to Rivera's motive in requesting the investigation; and that Torres has failed to provide enough evidence to show the remaining individuals retaliated against her.

***The Secretary's Legitimate Reason for the Adverse Employment Action***

Torres argues that the Secretary has not shown a non-retaliatory reason for the investigation. Docket No. 60 at 5. I disagree. Rivera testified that he saw Torres provide medical records to two non-employees in February 2013. DSF ¶ 6; Docket No. 58-2 at 32:17–3:33. When Rivera questioned Torres about this, Torres explained that she was providing the records based on an MOU. *Id*. Rivera then asked Isaac whether an MOU existed, but Isaac responded that there was

no MOU. *Id*. at 33:4–6. Separately, and presumably close in time to this incident, Virella notified Rivera that Torres was blackmailing her. *Id*. at 33:12–14. According to Rivera, both of these incidents—Torres's conduct with sharing records and the alleged blackmailing—motivated him to request the investigation because Torres was potentially violating Army policy and HIPPA. Docket No. 58-2 at 33:10–14; DSF ¶ 5. This is clearly a non-discriminatory reason for initiating an investigation.

Torres challenges Rivera's testimony about his conversations with Isaac and Virella and argues that this evidence is inadmissible hearsay and cannot be considered on summary judgment. Docket No. 60 at 6 (citing Fed. R. Civ. Proc. Rule 56(e); *Davila v. Corporacion de Puerto Rico para la Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2012)). However, even if the court did not consider this information, Rivera testified that he observed Torres sharing personal records, and Torres corroborated this testimony by tacitly admitting to sharing personal information. Docket No. 58-2 at 32:17–3:33; Docket No. 58-2 at 19:18–19 ("I was doing it for so many years."). Torres also testified that two people complained about her use of obscene language. *Id*. at 19:13–15. This evidence alone is "enough to enable a rational factfinder to conclude that there existed a nondiscriminatory reason" for requesting the investigation—Torres was potentially violating Army policy and HIPPA. *Melendez v. Autogermana, Inc.*, 622 F.3d 46, 52 (1st Cir. 2010) (internal quotations omitted); *see also Mariani-Colon v. Dep't of Homeland Sec.*, 511 F.3d 216, 221 (1st Cir. 2007) (employer's burden is one of production, not persuasion).

Because the Secretary has proffered a legitimate reason for the investigation, Torres bears the burden of showing that this reason was pretext and that the investigation would not have occurred absent discriminatory animus. *Natal Perez*, 291 F. Supp. 3d at 234.

***Evidence of Pretext and Discriminatory Animus by Rivera***

"It is well-established in this circuit that evidence of retaliation can be direct or circumstantial." *DeCaire v. Mukasey*, 530 F.3d 1, 20 (1st Cir. 2008) (citing *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 335 (1st Cir. 2005)). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Moreta v. First Transit of PR, Inc.*, 39 F. Supp. 3d 169, 180 (D.P.R. 2014) (quoting *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662–63 (1st Cir. 2010)). Here, there is sufficient evidence that, when taken together, raises a genuine dispute as to Rivera's reason for requesting the investigation.

First, there is a clear dispute over *when* Rivera became aware of Torres's prior EEO activity. *See Serrano*, 2014 WL 4924434, at *12 ("[R]etaliating party must be aware of the protected activity that he is believed to be retaliating against."). Rivera testified that he learned of Torres's EEO complaint against Virella on April 18, 2012. DSF ¶ 29; Docket No. 58-2 at 31:15–21. But Torres testified that Rivera became aware of this EEO activity in February 2013, roughly a month before requesting the investigation. PSF ¶ 1; Docket No. 58-2 at 4:12–17 ("When they [Rivera] became aware? Since day one, since the day that he became my supervisor in 2013."). Rivera and Torres's testimony is the only evidence on record as to when Rivera became aware of Torres's EEO activity. The testimony is inconsistent and would, therefore, support a finding of pretext. *Moreta*, 39 F. Supp. 3d at 180.

This factual dispute also raises an issue of temporal proximity. It is well established that close temporal proximity between the protected activity and the employer action "can create an inference of causation" where the two events are sufficiently close in time. *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 85 (1st Cir. 2006); *see Calero-Cerezo*, 355 F.3d at 25 (temporal proximity must be "very close" to support inference of causation). *Compare Sanchez-Rodriguez v. AT&T Mobility P.R., Inc.*, 673 F.3d 1, 15 (1st Cir. 2012) (three months sufficient to infer causation), *with Caez-Fermaint v. State Ins. Fund Corp.*, No. 15-3050, 2017 WL 6452411, at *11 (D.P.R. Dec. 18, 2017) ("seven months is too long to prove causal connection."). Torres's testimony that Rivera became aware of her EEO activity in February and requested the investigation only one month later is evidence that supports an inference of causality. Docket No. 58-2 at 4:12–17.

The second factual dispute involves Rivera's behavior towards Torres after becoming her supervisor. Docket No. 60 at 7. According to Torres, Rivera was nice to her before becoming her supervisor and learning of her EEO activity, and his attitude became aggressive and loud afterwards. DSF ¶ 26; Docket No. 58-2 at 5:18–20; 8:20–22. In support of this change in attitude, Torres's co-worker, Elsa Cortes, testified that on two occasions she observed Rivera yelling at Torres after Rivera became Torres's supervisor. PSF ¶ 9; Docket No. 61-2 at 17:1–8. This surprised Ms. Cortes "because [Rivera had] never had that attitude with [her] or with anybody that worked in [her] area." *Id*.

According to the Secretary, however, Rivera's change in attitude was due to his new role and responsibilities as Torres's supervisor and was unrelated to her EEO activity. DSF ¶ 27 (citing Docket No. 58-2 at 9:9–11). But because Cortes testified that she had never seen Rivera speak to anyone like that before, and given Torres's testimony that Rivera had just become aware of her EEO activity, a jury could reasonably find this explanation implausible because it supports an inference that Rivera's change in behavior *was* related to Torres's protected activity. *Moreta*, 39 F. Supp. 3d at 180.

Alternatively, the Secretary highlights Rivera's demeanor as an explanation for his conduct towards Torres. The Secretary avers that Rivera normally "was dramatic and used facial expression when he talked—[that] it was his trademark." DSF ¶ 30. But, as Torres correctly points out in her objection, this statement of fact fails to indicate who is testifying about Rivera's normal demeanor. PRSF ¶ 30. Thus, the court has no way of determining the source or authenticity of this statement of fact. Nevertheless, there is a clear weakness in this fact because a reasonable jury could find apparently unorthodox aggressiveness and yelling, as indicated by Cortes's testimony, to be considered beyond mere dramatic facial expressions. *Moreta*, 39 F. Supp. 3d at 180.

The bottom line is that the facts concerning *when* Rivera became aware of Torres's EEO complaints as well as *why* his attitude towards her changed are disputed. Because these facts go towards Rivera's reason for requesting the investigation, they clearly affect the outcome of this

retaliation suit and are, therefore, material. *Anderson*, 477 U.S. at 248 (A fact is "material" only if it "might affect the outcome of the suit under the governing law.").

In addition, Torres testified that she had been "doing this [sharing records] for so many years" without any supervisor telling her that it was wrong. Docket No. 58-2 at 19:16–19. True, Torres fails to present evidence that any other employees were similarly following these practices. But Torres's testimony reasonably suggests that this was an accepted, or at least unquestioned, practice for an extended period of time, even if only with respect to her and no other employees.

In conjunction with the factual disputes discussed above, this apparently sudden questioning of Torres's sharing of personal information raises a triable issue regarding Rivera's decision to request the investigation. A jury could reasonably, albeit barely, infer that Rivera did not act solely for the purpose that the Secretary asserts but rather as retaliation for Torres's EEO activity. *Moreta*, 39 F. Supp. 3d at 181 (plaintiff need not prove that retaliation was the only cause of employer's action); *see also Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 50 (1st Cir. 2010) ("To withstand summary judgment, a plaintiff need not 'prove by a preponderance of the additional evidence that [retaliation] was in fact the motive for the action taken. All a plaintiff has to do is raise a genuine issue of fact as to whether [retaliation] motivated the adverse employment action.'" (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir. 2000))). Therefore, the Secretary's motion for summary judgment as it pertains to Rivera is denied**.**

***Insufficient Evidence of Retaliation by Isaac, Virella, Fernandez, Torres-Sabater and Burgos***

As to Isaac, Virella, and Fernandez, Torres-Sabater, and Burgos, Torres has failed to show sufficient evidence such that a jury could reasonably find that any of these individuals retaliated against her.

Torres's assertion that Isaac and Virella "had all the motivation in the world to retaliate" is conclusory and unsupported by the record. Docket No. 60 at 5. Torres provides no evidence to suggest that Isaac committed an adverse action; he merely told Rivera that there was no MOU that would justify Torres sharing employees' medical information, which Torres has not alleged was an untrue or malicious statement. Moreover, her prior EEO complaint against Isaac occurred in 2011,

two years before his minimal involvement in this case. Docket No. 1 ¶¶ 14, 40. This length of time, without more substantial evidence of retaliation, is insufficient to support an inference of causation between her EEO activity and Isaac's conversation with Rivera. *Caez-Fermaint*, 2017 WL 6452411, at *11 ("seven months is too long to prove causal connection."). Likewise, Torres's prior EEO complaint against Virella occurred in 2006. PSF ¶ 2; Docket No. 58-2 at 4:7–9. Virella's notice to Rivera seven years later that Torres was blackmailing her fails to support a reasonable inference of retaliation, even if Virella's notice could qualify as an adverse action rather than a protected activity. *Caez-Fermaint*, 2017 WL 6452411, at *11.

Torres also believes Fernandez retaliated against her but fails to point to sufficient evidence to support her claim. Torres simply states that Fernandez's appointment of an investigator qualifies as retaliatory because she was the only one investigated in the 1st MSC, and he knew that she had a prior EEO complaint against Virella. DSF ¶ 41. But Torres provides no evidence that other employees in the 1st MSC were violating the same policy such that an investigation would be called for, and she "agrees that it is reasonable for the Army to investigate when there is an allegation that federal law has been violated." *Id*. ¶¶ 42, 43. A jury could not reasonably find retaliatory motive on Fernandez's part from this evidence.

The record also fails to support any claim that Torres-Sabater retaliated against Torres. Torres-Sabater had no knowledge of Torres's prior EEO activity. Docket No. 58-2 at 24:8–16. As discussed above, without awareness of Torres's protected EEO activity, Torres-Sabater could not have retaliated against Torres because of it. *Serrano*, 2014 WL 4924434, at *12 (D.P.R. Sept. 30, 2014) ("[T]he retaliating party must be aware of the protected activity that he is believed to be retaliating against.").

Finally, Torres offers no evidence that Burgos retaliated against her when he received, assessed, and signed the notice of proposed suspension. Burgos was the new Commander of the 1st MSC. DSF ¶¶ 12, 13. Burgos had no involvement in the investigation against Torres, nor did he have any prior awareness of the investigation before becoming Commander. DSF ¶¶ 12, 13. He acted solely on the conclusions that were provided to him by Morrero. PRSF ¶ 13. When he

received the notice, Burgos accounted for Torres's years of service and performance then reduced the recommended ten-day suspension to five days and signed the notice of proposed suspension. DSF ¶¶ 12, 13, 14. This evidence in no way suggests retaliatory motive by Burgos, and Torres offers no further evidence that would lead a jury to reasonably decide otherwise.

Instead, Torres contends that there is a dispute over what information Burgos (and Torres-Sabater) relied on when deciding and issuing the proposed suspension—specifically, that they relied on inadmissible hearsay. Docket No. 60 at 7. But, as the Secretary correctly points out, employers are not restricted in what type of evidence they consider when rendering an employment decision; the court's hearsay rules for evidence do not apply. Docket No. 64 at 4–5; *Ramirez-Rodriguez v. Boehingher Ingelheim Pharms., Inc.*, 425 F.3d 67, 76–77 (1st Cir. 2005) (facts considered by employers are not facts used to prove the "truth of the matter asserted"). Like the employer in *Ramirez-Rodriguez*, Torres-Sabater and Burgos were rendering an employment decision: whether and for how long Torres should be suspended. Thus, the information they relied on in making this decision would not be considered hearsay. Therefore, Torres's contention that there is a genuine dispute over hearsay evidence in this respect fails.

## CONCLUSION

For the foregoing reasons, the Secretary's motion for summary judgement is **DENIED** as it pertains to Rivera's involvement in this dispute and **GRANTED** as it pertains to Isaac, Virella, Fernandez, Torres-Sabater, and Burgos.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of June 2018.

                                          *S/ Bruce J. McGiverin*
                                          BRUCE J. MCGIVERIN
                                          United States Magistrate Judge